**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51511**

| | |
|---|---|
| JOHN HUEY DANIELS, | ) |
| | ) **Filed: June 24, 2025** |
| Petitioner-Appellant, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| STATE OF IDAHO, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Respondent. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Lynn G. Norton, District Judge.

Judgment summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Silvey Law Office Ltd; Greg S. Silvey, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

John Huey Daniels appeals from the district court's judgment summarily dismissing his petition for post-conviction relief. Daniels argues the district court erred in granting summary dismissal on two claims of ineffective assistance of counsel, both of which related to trial counsel's alleged failures at trial. For the reasons set forth below, we affirm the district court's judgment summarily dismissing Daniels' petition for post-conviction relief.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In the underlying criminal case, Daniels was found guilty of aggravated assault with an enhancement for use of a deadly weapon. This Court set forth the underlying facts in *State v. Daniels*, Docket No. 47481 (Ct. App. Sept. 8, 2021) (unpublished):

> In February 2019, multiple police officers responded to a shooting in Garden City. One officer arrived at the scene and found a victim, who had been shot in the abdomen. Another responding officer stopped a vehicle in Garden City

1

matching the description of the suspect's vehicle. Daniels was driving that vehicle and had a female passenger. During a subsequent search of the vehicle, officers located a gun in the vehicle's passenger-door panel. The State charged Daniels with felony aggravated battery. Daniels pled not guilty, and the case proceeded to trial.

At trial, the State presented the testimony of numerous witnesses, including Detective O'Gorman. Detective O'Gorman conducted a gunshot residue test on Daniels after apprehending him. After advising Daniels of his *Miranda*[1] rights, Detective O'Gorman interviewed Daniels and his female passenger separately. Detective O'Gorman testified that Daniels was initially "very adamant" he was not involved in the shooting. For example, Daniels claimed he had been at a friend's home in Garden City and was taking his female passenger to another friend's home. Further, when Detective O'Gorman told Daniels--as a ruse--that the gunshot residue test showed residue, Daniels explained that the prior evening he had fired a pistol he was considering purchasing.

When Detective O'Gorman told Daniels his passenger had indicated Daniels was the shooter, Daniels' story changed. Detective O'Gorman testified that, at that point, Daniels told Detective O'Gorman that Daniels picked up an individual named Jeff at a gas station in Garden City to give him a ride to Nampa. Jeff first needed to pick up his belongings from a friend's trailer; Jeff asked if Daniels had a gun; and Jeff stated he "needed backup." When Daniels arrived at the trailer, he learned it belonged to the victim with whom Daniels said he had a "beef." After Daniels entered the trailer with a gun in his pocket, the victim and another individual became aggressive towards Daniels, including hitting him. Daniels pulled the gun from his pocket, and it went off, shooting the victim.

Daniels was convicted and appealed; his conviction was affirmed on appeal. *Daniels*, Docket No. 47481.

Daniels filed a petition for post-conviction relief and requested counsel be appointed. Counsel was appointed and filed several amended petitions, ultimately filing the third amended petition at issue. The State filed a motion for summary dismissal which the district court granted, in part. The district court dismissed multiple claims; at issue here, the court dismissed two claims of ineffective assistance of counsel. First, the district court dismissed a claim of ineffective assistance of counsel based on trial counsel's failure to ensure that Idaho Criminal Jury Instruction 1519, commonly referred to as the "stand your ground" instruction, was included in the final jury instructions. The district court found that although counsel rendered deficient performance, Daniels could not establish any prejudice as a result of the deficient performance. Second, the district court dismissed a claim of ineffective assistance of counsel for failing to introduce into evidence a photograph of a machete found at the scene, finding neither deficient performance nor prejudice. Daniels appeals.

## II.

### STANDARD OF REVIEW

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

### III.

### ANALYSIS

A petition for post-conviction relief initiates a proceeding that is civil in nature. I.C. § 19-4907; *Rhoades*, 148 Idaho at 249, 220 P.3d at 1068; *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992).

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify

3

relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin v. State*, 138 Idaho 269, 272, 61 P.3d 626, 629 (Ct. App. 2002).

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007).

> The prejudice prong requires the petitioner to show that the alleged deficient conduct
>
> so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. We have recognized that this is a weighty burden for a defendant to carry. Indeed, a defendant must show a reasonable probability that the trial's outcome would have been different but for counsel's deficient performance. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Adams v. State*, 158 Idaho 530, 536-37, 348 P.3d 145, 151-52 (2015) (quotations and citations omitted).

This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate

preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

Daniels argues the district court erred in summarily dismissing two claims of ineffective assistance of trial counsel for failing to: (1) ensure ICJI 1519 was given to the jury; and (2) introduce into evidence a picture of the machete found at the scene.

Idaho Criminal Jury Instruction 1519 reads:

> In the exercise of the right of self-defense, one need not retreat. One may stand one's ground and defend oneself by the use of all force and means which would appear to be necessary to a reasonable person in a similar situation and with similar knowledge. This law applies even though the person being attacked might more easily have gained safety by flight or by withdrawing from the scene.

As to ICJI 1519, the district court found trial counsel was deficient for failing to ensure the instruction was included. However, the district court found that Daniels failed to establish there was a reasonable probability the outcome of the trial would have been different because the jury unanimously determined that Daniels failed to establish self-defense.

Daniels argues the district court's conclusion regarding the lack of prejudice was error because without ICJI 1519, the jury could reject Daniels' argument that he acted in self-defense regardless of the reasonableness of his other actions, including that he did not have to leave the scene instead of defending himself. The State argues the district court correctly found a lack of prejudice because the issue in the case did not come down to whether Daniels had a duty to retreat. Instead, the State argues that the case came down to credibility and which story the jury believed--Daniels' or the State's. The jury rejected Daniels' version of events, which meant it rejected that Daniels' acted in self-defense.

The evidence at trial indicated that Daniels' version of events differed over time. As noted above, during Daniels' interview with law enforcement, Daniels initially denied any involvement in the shooting, lied about his whereabouts at the time of the shooting, and denied having a gun. When confronted with the results of the gunshot residue testing, Daniels tried to explain away the gunshot residue by claiming he talked to a person about purchasing a handgun and went and shot the gun but had deleted any information from his cell phone relating to the calls or texts to that unidentified person. Daniels then admitted that he had not been truthful about what happened but still denied any involvement in the shooting or that he had a gun. When confronted with the statements of a witness, Daniels then claimed the shooting was accidental because although he put the gun in his back pocket before entering the trailer, he did not know there was a round in the

chamber. Daniels told law enforcement he went to the trailer and was physically assaulted by the victim and another individual. At trial, Daniels claimed that when he pulled the gun from his pocket, he was only intending to scare the victim but did not intend to shoot him. However, in the ensuing scuffle, the gun accidentally discharged, and the victim was shot but ran off. The State played the approximately four-hour long video of Daniels' interview with law enforcement and highlighted the different versions of events that Daniels told the detective. Other witnesses also contradicted various portions of Daniels' testimony including that Daniels had no visible injuries despite his characterization of the fight as an attack.

Daniels testified that by the time he decided it would be best if he left, the victim was in front of him and the other person was behind him, so he was cornered. Daniels testified that he tried to take a step back, but the victim came at him swinging. As Daniels was being hit by both people, he thought he heard the sound of a blade on a counter and so he "went for [his] gun" with the intent "to scare them, to get them away from me." In the ensuing physical altercation, the gun discharged but Daniels testified he did not intend for the gun to go off. Daniels clarified, "And when I pulled the gun out, I pulled it out as a deterrent factor only. I was never intending to point it at nobody or shoot anybody, but to simply stop them." Daniels also testified that the reason he told different versions of the events to law enforcement was because he was scared.

The district court did not err in concluding Daniels failed to establish any prejudice as a result of the exclusion of ICJI 1519. The jury was tasked with selecting which version of events it found more credible, that of Daniels or the State. By finding that Daniels shot the victim willfully or intentionally, and not as an act of self-defense, the jury rejected Daniels' version of events, including his statements that the shooting was accidental. Nothing in the record supports a conclusion that the jury rejected Daniels' claim of self-defense because Daniels failed to retreat. Daniels' legal ability to stand his ground rather than retreat, as described in ICJI 1519 was not at issue under the facts of the case.

Daniels argues ICJI 1519 was especially important because the State argued in closing that Daniels had to retreat from the physical fight. We read that portion of the transcript differently. What the State argued was that Daniels could have left before the physical altercation began, a statement that Daniels agreed with during his interview with law enforcement. In closing, the State also explained that Daniels had the right to defend himself during the physical fight but that defense had to be proportional, and Daniels exceeded the reasonable force necessary to repel the

6

attack. Thus, contrary to Daniels' claim, nothing about the State's closing argument indicates the State argued that Daniels had to retreat. As a result, ICJI 1519 was not "especially important" because it did not contradict or clarify an erroneous comment by the State. Because the jury rejected Daniels' defense, there is no reasonable probability that the outcome of the trial would be different had ICJI 1519 been given. The district court did not err in finding Daniels failed to establish any prejudice as a result of trial counsel's failure to ensure that ICJI 1519 was given to the jury and, as a result, failed to establish a claim of ineffective assistance of counsel.

Daniels next argues his attorney was ineffective for failing to introduce a photograph of the machete found at the scene. The district court found that trial counsel was neither ineffective by failing to introduce a photograph of the machete nor did Daniels suffer any prejudice from the failure. While it may be true that the machete and its location was an important part of Daniels' defense, trial counsel recognized that importance and introduced evidence and argument related to the machete during the trial. Both sides repeatedly questioned witnesses and both sides addressed the machete in their closing arguments to the jurors. Several witnesses describe the machete as something between a knife and a sword and provided a detailed description of the machete. A photograph would have been duplicative of the evidence already admitted. That Daniels believes a photograph would have "been worth a thousand words," does not make the failure to introduce the photograph deficient performance. Consequently, Daniels has failed to establish a prima facie case of deficient performance by trial counsel. Additionally, nothing in the record shows a reasonable probability that the outcome of the trial would have been different had a photograph of the machete been admitted. Various witnesses testified that no one had the machete in hand during the altercation or threatened Daniels with the machete. The description and location of the machete was addressed by all sides and the jury heard the testimony. Despite hearing Daniels' testimony that he thought he heard a blade being picked up; the jury found Daniels guilty. Because Daniels failed to make a prima facie showing of either deficient performance or prejudice, the district court did not err in summarily dismissing this claim.

## IV.

## CONCLUSION

The district court did not err in concluding that Daniels failed to establish a genuine issue of material fact regarding either of his claims of ineffective assistance of counsel. The judgment summarily dismissing the petition for post-conviction relief is affirmed.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.